[Crim. No. 10314.  Second Dist., Div. Four.  Feb. 10, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL WEAVER BREESE, Defendant and Appellant.

Samuel Winnikoff, under appointment by the District Court of Appeal, Winnikoff & Kightlinger and Harry J. Kightlinger for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with, and pled guilty to, burglary in the second degree. Probation was denied and he was sentenced to state prison. He has appealed.

The sole contention made on this appeal is that, in the light of information as to defendant's psychiatric and personality problems, as disclosed by the probation report, trial counsel should have either moved to vacate the guilty

plea or to secure further psychiatric proceedings; and that, absent such action, the trial court should, on its own motion, have taken one or both of these steps. We think the point without merit.

The probation report discloses a long history of involvement with the law, including experiences on probation and in various Youth Authority institutions. Defendant had not responded to treatment programs in any of these facilities and the Youth Authority had indicated that it would not accept him for a new commitment. While the report indicates that he was a homosexual, a psychiatrist had reported that he was not a sexual psychopath.[1] All of the psychiatric reports included in the probation report showed that defendant was possibly a sociopathic personality, but there is no indication of any other recognized psychological or psychiatric condition. The picture is of a low intelligence person, unwilling to adapt himself to the requirements of society.

This was not a case where the data before the trial judge raised any unresolved issues as to defendant's capacity to stand trial within the meaning of section 1368 of the Penal Code (Cf. *People* v. *Westbrook* (1964) 62 Cal.2d 197 [41 Cal.Rptr. 809, 397 P.2d 545]), or as to his "insanity" as that term is defined in *People* v. *Wolff* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], nor any unresolved issue as to his mental capacity to form the intent necessary to the crime of burglary. No suggestion of epileptic fugue, nor of any other kind of unconsciousness, appears. In fact, defendant's own statements to the probation officer show that he was fully conscious of the crimes he committed and of their illegality. Nor, in the light of the data presented in the probation report as to defendant's sexual problems, do we have the situation which, in *People* v. *Westbrook, supra,* led the Supreme Court to direct a trial court to institute proceedings under the provisions of sections 5500-5522 of the Welfare and Institutions Code.

Counsel adverts to the fact that, at the time of sentence, the trial court expressed the opinion that defendant was in need of psychiatric help and that the formal sentence contains a recommendation that defendant be sent to Vacaville—the institution in the Department of Corrections wherein such treatment is most fully available. But the very existence of Vacaville, and of its specialized treatment programs, is a recognition of the fact that there are many persons with socio-

---

[1]Now known as a ''mentally disordered sex offender.''

psychological problems who are legally competent to stand trial, legally responsible for their conduct, and not within the special groups for which the Mentally Disordered Sex Offender Act or the narcotic treatment program at the California Rehabilitation Center are designed, and who, therefore, are properly tried and sentenced in accordance with the normal processes of the criminal law, to be dealt with in accordance with the informed expertise of the Department of Corrections and the Adult Authority.

We can find no error in the proceedings in the trial court; its judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.